## C. T. LAWRENCE v. J. R. WEEKS.

*Landlord and Tenant—Agricultural Partnership—Mortgage— Crop Lien — Innocent Creditors Without Notice — Equity — Release—Registration.*

1. A note secured by a lien and chattel mortgage, duly recorded April 24th, 1889, was assigned for value without notice of any equities and before due, to the plaintiff. Previous to this assignment, and on the 12th day of March, 1889, the tenant of the maker of plaintiff's note had executed to defendant a lien for supplies and advancements upon the crops cultivated by him, and his landlord (the maker of said note) executed to defendant a release of the landlord's lien for rent. This release was never recorded. The plaintiff's assignor, the payee of the note, had notice, and plaintiff did not have notice, of defendant's liens. The crop raised by the tenant was two bales of cotton, worth $92.53, which was taken and converted by the defendant: *Held*, that the plaintiff was entitled to recover the landlord's share—one-half the value of the cotton.

2. The assignee, for value of note before it is due, and without notice, takes it, discharged of any equities of the maker, or any one claiming under him, against the payee.

3. The agreement between the landlord and the defendant could have no greater force than an unrecorded mortgage to affect the rights of subsequent innocent creditors for value.

4. Where B. was to furnish land, farming implements, feed and team, and W. was to do the work, and the crops were to be equally divided: *Held*, that there was not an agricultural partnership, and the release of B. showed the relation of landlord and tenant.

This is a controversy, without action, heard and determined before *Armfield, J.*, at September Term, 1890, of the Superior Court of HALIFAX County, upon the following facts agreed upon and submitted:

1. In the beginning of the year 1889, one W. S. Biggs was engaged in the cultivation of the soil in said county, upon the following described land: His own land, bounded by the lands of the Higgs tract, W. F. Riddick and W. H. Kitchin.

2. Upon said land in said year the said Biggs cultivated a one-horse crop for wages, and a one-horse crop was cultivated thereon by Bryant Wiggins, under the following agreement between himself and said Biggs: Biggs was to furnish the land, farming implements, the corn, and feed the team, and the said Wiggins was to do the necessary work, and the crop was to be equally divided.

3. The said Biggs, on the 19th day of April, 1889, executed to John T. Brinkley a lien and mortgage, which was duly recorded on the 24th day cf said month. The note therein mentioned was for the purchase-money of horses, theretofore sold to said Biggs by said Brinkley.

4. The said Brinkley, immediately after the execution of said mortgage, sold the note therein mentioned for valuable consideration to the plaintiff, and the same is now due and unpaid.

5. To enable the said Wiggins to cultivate the said crop, the defendant J. R. Weeks agreed to make, and did make, advances to him in the sum of $80, and took from him, before making any advances, an agricultural lien, which was duly registered on the 12th day of March, 1889, and excepting that part thereof which reads as follows, was never registered:

" I, the owner of the land described in the foregoing instrument, do hereby agree with the said J. R. Weeks, in consideration of the advance to be made to Bryant Wiggins by J. R. Weeks, that the above given lien shall have priority to the rents due me by Bryant Wiggins during the year 1889, over any rents to which I may be entitled, upon the crop to be made by said Bryant Wiggins on said land during said year.                    W. S. BIGGS.  [Seal.]
Witness: J. R. ANDERSON "

6. There were two bales of cotton raised on the land cultivated by said Wiggins worth $92.53, and the said Weeks

took possession of both bales and converted them to his own use.

7. The plaintiff had no actual notice of the signing of the said writing by said Biggs at the time of the transfer by said Brinkley to him, but said Brinkley had actual notice of said paper signed by said Biggs at the time of the execution of the mortgage and lien to him.

If the Court shall be of the opinion that the plaintiff is entitled to recover, it will give judgment in his favor for $46.26, one-half the value of said cotton, or any amount he may be entitled to, and for costs, otherwise it will give judgment against the plaintiff for costs.

The Court gave judgment for the defendant, and the plaintiff appealed.

*Messrs. W. A. Dunn* (by brief) and *J. B. Batchelor*, for plaintiff.

*Mr. R. O. Burton, Jr.*, for defendant.

DAVIS, J.—after stating the facts: The agricultural lien set out is in the usual form, for supplies to an amount not to exceed $80, to be advanced to Bryant Wiggins during the year 1889, "to be by him expended in the cultivation of a crop during said year upon the following described land * * * owned by W. S. Biggs, situate in Conconary township."

The mortgage from Biggs to Brinkley, also set out in the case, is to secure advances "in money or supplies to an amount not to exceed the sum of one dollar," and an existing indebtedness of $280 56, due the first day of November following, and conveys, besides certain personal property, "all of the crops which may be made by him the present year on the land of his own in Halifax County, bounded by the lands of the Higgs tract, W. T. Riddick and W. H.

Kitchin land, and upon any other that he may cultivate in said county," &c.

It is insisted for the plaintiff (appellant) that the lien given by Wiggins to Weeks is void for vagueness and uncertainty in the description of the land: "Owned by W. S. Biggs, in Conconary township."

It is further contended for the appellant that if it be conceded that the instrument executed by Biggs, and attached to the lien given by Wiggins to Weeks, subordinated his interest in the crop to the debt that might be due from Wiggins to Weeks for advancements, yet, as it was not registered, it passed nothing as against creditors or purchasers for value, and to this it is replied: It passed an *equity* which is good against the plaintiff as to his pre-existing debt.

These are questions with which we need not trouble ourselves, for, as the note, with the mortgage securing it, was not due till November, 1889, and was transferred to the plaintiff before it was due, and, without notice to him, he took it, discharged of any equity that either the maker or any one claiming through him might have against the payee in the note.

While Brinkley, the payee of the note and mortgagee, had *actual* notice of the paper signed by Biggs, releasing his preferred lien for rents to Weeks, yet Weeks had the lien executed by Wiggins duly registered, without taking the precaution to have the agreement of Biggs registered with it as a part thereof; and, as to third parties, the agreement had no more force and effect than an unregistered mortgage or lien would have, and an unregistered mortgage or lien will not operate to the prejudice of creditors or purchasers for value—certainly of purchasers or creditors for value, and without notice. This is too well settled to need citation of authority.

The defendant says that the mortgage to Brinkley did not include the crop made on the land by Wiggins, for, as to

that, Biggs and Wiggins were agricultural partners, and for this he cites the cases of *Lewis* v. *Wilkins*, Phil. Eq., 303, and *Reynolds* v. *Pool*, 84 N. C., 37.

There was no contract of partnership (*The Code*, § 1744)—certainly none by express agreement—and both the lien made by Wiggins to the defendant Weeks, and the *unregistered* agreement by Biggs attached thereto, not only precludes the idea of a partnership by implication, but they show too plainly to admit of doubt that the relation between Biggs and Wiggins was that of landlord and tenant, or cropper.

Upon the case submitted, the plaintiff. was entitled to judgment for $46.26, and costs.

There is error.